# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JONATHAN D. WILLIAMS,         :

         Plaintiff,            :        Civ. No. 18-9606 (PGS) (DEA)

        v.                  :

ANN KLEIN FORENSIC CENTER, et al.,    :        **OPINION**

         Defendants.         :

                                        :

**PETER G. SHERIDAN, U.S.D.J.**

## I.    INTRODUCTION

Plaintiff is a pretrial detainee proceeding with this action pursuant to 42 U.S.C. § 1983. In July, 2019, this Court consolidated this action with the allegations plaintiff alleged in Civ. No. 19-8930. Therefore, this Court will analyze the allegations raised in both actions as if they were filed in one.[1]

Previously, this Court granted plaintiff's application to proceed *in forma pauperis*. (*See* Civ. No. 18-9606, ECF 3; Civ. No. 19-8930, ECF 4). Thereafter, counsel was appointed to represent plaintiff. (*See* No. 18-9606, ECF 5, 15, 16). Appointed counsel was given the opportunity to file an amended complaint on behalf of plaintiff. (*See id.*, ECF 19). However, if no amended complaint was filed, this Court would proceed to screen plaintiff's original complaint. (*See id.*). Having not received a proposed amended complaint from plaintiff's

---

[1] The Clerk will be ordered to combine the original complaint in this action along with the complaint in 19-8930 as an all-inclusive amended complaint as a new docket entry in 18-9606. Also, it is worth noting that plaintiff filed numerous letters after submitting his complaint in 19-8930. Nevertheless, this Court will not consider those in this opinion as plaintiff cannot file amended complaint piecemeal, but instead must file one all-encompassing amended complaint. *See* L. Civ. R. 15.1(a).

appointed counsel, this Court will now screen plaintiff's allegations in his original complaints filed in both actions that have been consolidated.

This Court must screen the allegations pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether they are frivolous or malicious, fail to state a claim upon which relief may be granted, or whether the allegations seek monetary relief from a defendant who is immune from suit. For the following reasons, plaintiff's action will be permitted to proceed in part. More specifically, as outlined below, plaintiff's excessive force claim against defendant Aguirre will be permitted to proceed. Additionally, plaintiff's retaliation claims against defendants Aguirre and Jenkins will be permitted to proceed. Finally, plaintiff's condition of confinement claim related to food (or lack thereof) will proceed against defendant Roth.

## II.    LEGAL STANDARDS

Under the Prison Litigation Reform Act, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x

230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(l)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

    *Pro se* pleadings, as always, will be liberally construed.[2] *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, *"pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

    A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a

---

[2] While plaintiff is now proceeding through counsel, given that this Court is reviewing his complaints which he filed *pro se*, they will be liberally construed.

judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## III.    PLAINTIFF'S ALLEGATIONS AND ANALYSIS

Plaintiff's allegations will be construed as true for purposes of this screening opinion.

Plaintiff names the following defendants in No. 18-9606: (1) Ann Klein Forensic Center; (2) Dr. Glenn Ferguson – Chief Executive Officer Ann Klein Forensic Center; (3) Dr. Moisey – Psychiatrist – Ann Klein Forensic Center; (4) Dr. Douglas Smith – Psychiatrist Ann Klein Forensic Center; (5) Dr. Paul – Psychiatrist Ann Klein Forensic Center; (6) Dr. Strathern – Psychologist Ann Klein Forensic Center; (7) Mercer County Prosecutor's Office; (8) Timothy Ward, Esq. – Mercer County Prosecutor's Office; (9) Angelo J. Onofri, Esq. – Top Prosecutor Mercer County Prosecutor's Office; (10) Judge Thomas Brown – Superior Court Judge; (11) Sergeant Giovani – Correctional Sergeant Mercer County Correctional Center; (12) Christopher Christie – Old Governor; (13) Mr. Aguirre – Medical Security Officer Ann Klein Forensic Center; (14) Paul R. Adezio – Former Record Custodian McDade Administrative Building; (15) John Doe # 1 – President of Homeware Video Visitation Services; (16) Jane Does 1-3 – Triage Nurses Mercer County Correctional Center; (17) S.A. Moon – Sergeant Law Enforcement Adjudicator Mercer County Correctional Center; (18) Almeen Jenkins – Medical Security Officer Ann Klein Forensic Center; and (19) Dr. Robert Roth – Psychiatrist Ann Klein Forensic

Center. In addition to these defendants that plaintiff expressly names, this Court also construes plaintiff as attempting to bring a claim against his deputy public defender, Jessica Lyons, based on allegations in the body of the complaint.

In No. 19-8930, plaintiff names the following as defendants: (1) Ann Klein Forensic Center; (2) D. Kessler, CEO; (3) Dr. Robert Roth; (4) K. Green (M.S.O.); (5) L. Hargis (M.S.O.); (6) Dr. Darivsz Chacinski; (7) Justyna Oberschmidt; (8) Silas Odaa; (9) Dr. Singh; and (10) Dr. Ricardo Grippaldi. In addition to these defendants, this Court also construes the complaint as attempting to bring a claim against H. Pica based on allegations in the body of the complaint.

While plaintiff's allegations are not always the definition of clarity, plaintiff appears to be bringing claims arising from his detainment at both the Mercer County Correctional Center ("MCCC") as well as the Ann Klein Forensic Center ("AKFC").

1. *AKFC*

Plaintiff seeks to sue AKFC. However, AKFC is not a "person" amenable to suit under Section 1983. *See Walker v. Cty. of Gloucester*, No. 15-7073, 2018 WL 1064210, at *3 (D.N.J. Feb. 27, 2018) (collecting cases and stating that County Correctional Facility is not a "person" under Section 1983); *see also Boomer v. Lewis*, 541 F. App'x 186, 192 (3d Cir. 2013). Accordingly, plaintiff's claims against this defendant will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

2. *Dr. Paul and Sergeant Giovani*

Dr. Paul is a psychologist who works at AFKC. (*See* No. 18-9606, ECF 1 at 8). Dr. Paul apparently came to evaluate plaintiff while he was incarcerated at MCCC. (*See id.* at 13). Dr. Paul stood by plaintiff's door. (*See id.*). Plaintiff was nude sitting on his toilet. (*See id.*). Plaintiff

states Dr. Paul was there to conduct an evaluation of him. (*See id.*) Plaintiff asked Dr. Paul to leave numerous times. (*See id.*) Dr. Paul eventually did so. (*See id.*).

Plaintiff asserts that Sergeant Giovani, a correctional sergeant at MCCC, knew that plaintiff was not dressed when she permitted Dr. Paul to begin his evaluation. (*See id.* at 10, 25). Plaintiff also states that Giovani purportedly entered false reports against plaintiff into his record. (*See id.* 26). He states that these false reports directly related to plaintiff being pushed down a flight of stairs as Giovani was escorting plaintiff from a clinic area in MCCC. (*See id.*).

Pretrial detainees have a right to bodily privacy consistent with the security needs of a prison. *See Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017); *O'dell'bey v. Semple*, No. 19-304, 2020 WL 127698, at *7 (D. Conn. Jan. 10, 2020). In the context of allegations regarding viewing plaintiff on the toilet, courts typically look to whether incident(s) were regular/frequent and how close the viewing was in determining whether a plaintiff has stated a Fourth Amendment constitutional claim. *See Grummett v. Rushen*, 779 F.2d 491, 494-95 (9th Cir. 1985).

Plaintiff's allegations consist of an isolated incident. Plaintiff does not indicate in the complaint that the incident was prolonged. Indeed, he states that Paul eventually left upon plaintiff's repeated requests. Accordingly, plaintiff's Fourth Amendment claim against Paul and Giovani arising from Paul's view of plaintiff on the toilet will be dismissed without prejudice. *Accord Patrick v. McDermott*, No. 16-318, 2019 WL 3213750, at *6 (C.D. Cal. April 2, 2019) (factual allegations consisting of brief isolated incident where defendant looked at plaintiff's exposed penis and did nothing more does not plausibly suggest an entitlement to relief).

Plaintiff's allegation of Giovani entering false reports about him also fails to state a claim. This allegation is entirely devoid of facts, does not state what the reports said or in what

way they were false. Thus, this Court need not decide with respect to Giovani whether such allegations could sustain a claim, as such a conclusory allegation fails to state a claim under the *Iqbal* standard at the outset. *See, e.g. Sanchez v. Poag*, No. 11-3824, 2016 WL 1134536, at *3 (D.N.J. March 22, 2016) (allegation that defendant overlooked the filing of reports was conclusory and failed to state a claim because it was devoid of facts and did not state what the reports were or in what way they were false). Accordingly, plaintiff's claims against defendants Paul and Giovani will be dismissed without prejudice for failure to state a claim.[3]

    3. *Dr. Strathern, Dr. Moisey & Dr. Smith*

Plaintiff states that he was defamed by Dr. Strathern in an evaluation of plaintiff. (*See* No. 18-9606, ECF 1 at 17). Plaintiff also notes a report from Dr. Moisey in which he "literally lied on the incoming reports and stated that plaintiff reported auditory hallucinations where a little green man was talking to him." (*See id.* at 28). He claims that Dr. Smith also falsified medical records. (*See id.* at 45).

Plaintiff's claims against Strathern and Smith fail to state a claim for similar reasons as discussed with respect to Giovani. More specifically, plaintiff's complaint is completely devoid of any facts with respect to the purportedly falsity of their reports. Thus, this Court finds that such allegations fail to satisfy the *Iqbal* standard to state a claim. Therefore, plaintiff's claims against Strathern and Smith will be dismissed without prejudice.

It is true that plaintiff's allegations with respect to Moisey are more specific in that plaintiff explains what portion of his medical report he claims is false. Plaintiff's claims for

---

[3] Plaintiff alludes to the fact that Giovani's purported false report related to him being pushed down a flight of stairs. However, plaintiff does not allege who pushed him down the stairs and certainly does not state that Giovani pushed him down the stairs. Therefore, this Court will not construe the complaint as attempting to bring an excessive force claim against Giovani based on factual allegations that are not alleged.

deliberate indifference to his medical care is analyzed under the Fourteenth Amendment as

plaintiff is a pretrial detainee. *See Tapp v. Brazill*, 645 F. App'x 141, 145 n.4 (3d Cir. 2016).

Nevertheless, the Eighth Amendment's "deliberate indifference" standard provides a guide to

what, at a minimum, is owed to pretrial detainees. *See id.* (citing *Natale v. Camden Cnty. Corr.*

*Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003)).

> For the delay or denial of medical care to rise to a violation of the
> Eighth Amendment's prohibition against cruel and unusual
> punishment, a prisoner must demonstrate "(1) that defendants were
> deliberately indifferent to [his] medical needs and (2) that those
> needs were serious." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.
> 1999). Deliberate indifference requires proof that the official
> "knows of and disregards an excessive risk to inmate health or
> safety." *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 582
> (3d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837
> (1994)). We have found deliberate indifference where a prison
> official: "(1) knows of a prisoner's need for medical treatment but
> intentionally refuses to provide it; (2) delays necessary medical
> treatment based on a nonmedical reason; or (3) prevents a prisoner
> from receiving needed or recommended treatment." *Rouse,* 182
> F.3d at 197. Deference is given to prison medical authorities in the
> diagnosis and treatment of patients, and courts "disavow any
> attempt to second-guess the propriety or adequacy of a particular
> course of treatment ... (which) remains a question of sound
> professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*,
> 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin,* 551
> F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or
> medical malpractice do not trigger constitutional protections.
> *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found

"where the prison official persists in a course of treatment in the face of resultant pain and risk of

permanent injury." *See McCluskey v. Vincent,* 505 F. App'x 199, 202 (3d Cir. 2012) (internal

quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a

physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize

the necessity for a doctor's attention.'" *See Mitchell v. Beard,* 492 F. App'x 230, 236 (3d Cir.

2012) (*quoting Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987))).

This Court finds that plaintiff's allegations against Moisey also fail to state a constitutional claim. *See, e.g.*, *Rivera v. Tennis*, No. 09-888, 2010 WL 2838603, at *7 (M.D. Pa. May 20, 2010) (filing false medical report insufficient to state a constitutional claim as it amounted to disagreement in medical treatment), *report and recommendation adopted by*, 2010 WL 2838605 (M.D. Pa. July 19, 2010); *see also Moore v. Casselberry*, 584 F. Supp. 2d 580, 582 (S.D.N.Y. 2008). Indeed, this Court notes that plaintiff fails to allege how the purported falsity through the one statement in plaintiff's intake medical report by Moisey constituted Moisey's deliberate indifference to plaintiff's serious medical needs.

### 4. *Ferguson*

Plaintiff alleges Ferguson is Strathern's employer as CEO of AKFC. (*See* No. 18-9606, ECF 1 at 8, 17). Plaintiff claims that violations of the criminal code have taken place under the leadership of Ferguson at AKFC and that he failed to notify proper authorities who could have taken preventive action. (*See id.* at 18).

A § 1983 plaintiff cannot rely solely on a *respondeat superior* theory. *See Alexander v. Gennarini*, 144 F. Appx. 924, 925 (3d Cir. 2005) ("Section 1983 liability cannot be found solely on the basis of *respondeat superior*"). Instead, a plaintiff must allege that a supervisor had a personal involvement in the alleged wrongs. *See Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted).

With respect to supervisors, the United States Court of Appeals for the Third Circuit has

> recognized that "there are two theories of supervisory liability, one
> under which supervisors can be liable if they established and
> maintained a policy, practice or custom which directly caused the
> constitutional harm, and another under which they can be liable if
> they participated in violating plaintiff's rights, directed others to
> violate them, or, as the persons in charge, had knowledge of and
> acquiesced in their subordinates' violations." *Santiago v.*
> *Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation
> and alteration marks omitted).

*Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *see also A.M. ex rel. J.M.K. v. Luzerne*

*Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

In this case, plaintiff does not allege a policy, practice or custom specifically related and

tying them to allegations associated with Ferguson, nor does he allege that Ferguson participated

in or directed others to violate plaintiff's constitutional rights. Thus, plaintiff fails to state a

Section 1983 damages claim against Ferguson.

It is worth noting that a claim for prospective injunctive relief has a different legal

standard. The United States Court of Appeals for the Third Circuit has explained that a lack of

personal involvement does not preclude a plaintiff from obtaining prospective injunctive relief

for ongoing violations. *See Parkell*, 833 F.3d at 332 (citing *Hartmann v. Cal. Dep't of Corr. &*

*Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013)); *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th

Cir. 2011) (per curiam); *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70,

77 (3d Cir. 2011); *Koehl v. Dalsheim*, 85 F.3d 86, 88–89 (2d Cir. 1996). Rather, the focus is

remedial; a defendant must be an appropriate person to implement injunctive relief, should it be

ordered.

This Court notes that plaintiff is no longer detained at AKFC. (*See* No. 19-8930, ECF

19). Instead, he is now at MCCC. (*See id.*) "A prisoner's transfer from the prison complained of

generally moots his claims for prospective injunctive relief." *See Alsop v. Fed. Bureau of Prisons*, No. 17-2307, 2019 WL 1437606, at \*3 (M.D. Pa. March 1, 2019) (citing *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (other citations omitted)), *report and recommendation adopted by*, 2019 WL 1429534 (M.D. Pa. March 29, 2019). Therefore, plaintiff's claims for injunctive relief against Ferguson will also be dismissed without prejudice for failure to state a claim.

5. *Jessica Lyons*

Next, plaintiff sues Jessica Lyons, deputy public defender. She is alleged to be assisting defendant Timothy Ward in securing a wrongful conviction against plaintiff "by deliberately refusing to assist or participate in defense efforts. . . ." (*See* No. 18-9606, ECF 1 at 22). Plaintiff states that he has asked Lyons for grand jury minutes, but that his requests have been denied. (*See id.*)

A public defender does not "act under color of state law" within the meaning of § 1983 and cannot be subject to liability under that statute. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981). Nevertheless, where a public defender conspires with the state to deprive an individual of his rights, the public defender is not immune from civil liability under § 1983. *See Tower v. Glover*, 467 U.S. 914, 916-20 (1984) (finding public defender who allegedly conspired with judges and state attorney general to obtain criminal defendant's conviction was acting under color of state law). However, to plead conspiracy under § 1983, a plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009). A bare allegation of an agreement is insufficient to sustain a conspiracy claim. *See Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012).

Plaintiff does not present any facts to suggest a conspiracy besides his conclusory allegation that Lyons is actively assisting the prosecutor. Such conclusory and unsupported allegations are insufficient to sustain a claim against the Lyons, the deputy public defender representing plaintiff in his criminal action. *Accord Bayette v. Vanamburgh*, No. 19-13424, 2019 WL 6888408, at *4 (D.N.J. Dec. 17, 2019). Therefore, plaintiff's claims against Lyons will be dismissed without prejudice.

6. *Mercer County Prosecutor's Office, Timothy Ward & Angelo J. Onofri*

Plaintiff states that Ward is attempting to secure a wrongful conviction against plaintiff. (*See* No. 18-9606, ECF 1 at 22). Furthermore, he asserts that Ward is improperly using the shortened form of his first name, "Tim," on court records. Onofri is purportedly Ward's supervisor.

The Mercer County Prosecutor's Office is not a person amenable to suit under Section 1983. *See Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 854-55 (3d Cir. 2014). Thus, the claims against this defendant will be dismissed with prejudice.

Additionally, 'a state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under 42 U.S.C. § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also B.S. v. Somerset County*, 704 F.3d 250, 269 (3d Cir. 2013). Plaintiff's claims for monetary damages against defendants Ward and Onofri will be dismissed.[4]

---

[4] It may be that plaintiff is also attempting to bring a malicious prosecution claim against these two defendants. "To prove malicious prosecution under [§] 1983 when the claim is under the

Nevertheless, prosecutors are not immune from requests for injunctive relief. *See Blakeney v. Marsico*, 340 F. App'x 778, 779 (3d Cir. 2009) (citations omitted). Plaintiff's requests for injunctive relief relate to his detainment at the AKFC. Indeed, he seeks to stop his commitment to that facility. (*See* 18-9606, ECF 1 at 50). However, as previously noted, plaintiff is no longer detained at that facility, but is now incarcerated at MCCC. This transfer moots his claims for injunctive relief arising from his detainment at AKFC in the complaint against Ward and Onofri. *See Vaughn v. Cambria County Prison*, 709 F. App'x 152, 155 (3d Cir. 2017) (citations omitted). Accordingly, all of plaintiff's claims against these three defendants will be dismissed, albeit against the Mercer County Prosecutor's Office with prejudice.

7. *Judge Brown*

Plaintiff next claims Judge Brown refused to launch an investigation into Ward who is an alleged criminal. He also claims that Judge Brown ordered an assault on plaintiff to stop plaintiff from speaking during court proceedings in violation of his First Amendment free speech rights. Additionally, plaintiff asserts that Judge Brown signed "illegal orders" for a psychological evaluation of plaintiff.

At the outset, it is unnecessary for this Court to decide whether plaintiff can bring a claim against Judge Brown for his purported failure to bring a criminal investigation against Ward.

---

Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). Here, of course, plaintiff cannot sustain a malicious prosecution claim as he has not alleged that the criminal proceedings have ended in his favor. Furthermore, as explained previously in discussing Lyons and Ward's purported conspiracy, those allegations are conclusory and fail to state a claim.

Indeed, plaintiff fails to indicate the criminality of Ward in his complaint with any facial plausibility.

Next, a judicial officer has immunity in the performance of his duties. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991). The immunity is absolute and cannot be overcome by allegations of bad faith or malice. *See id.* There are two exceptions: (1) for non-judicial actions, not taken in the judge's official capacity; and (2) for actions which, although judicial in nature, were taken in the complete absence of jurisdiction. *See id.* at 11–12. Whether an act is judicial relates "to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *see also Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir.2000) (citations omitted).

Plaintiff's allegations relate to court proceedings which are judicial acts subject to judicial immunity. Furthermore, to the extent that plaintiff alleges that Judge Brown ordered an assault on plaintiff, such allegations are conclusory lacking any facial plausibility. Accordingly, plaintiff's claims for monetary damages against Judge Brown are dismissed.

Judicial immunity though only extends to monetary damages. *See Larsen v. Senate of the Commonwealth*, 152 F.3d 240, 249 (3d Cir. 1998). Nevertheless, to the extent plaintiff seeks injunctive relief from Judge Brown, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Plaintiff does not allege that such exception applies in this case. Accordingly, plaintiff's claims against Judge Brown will be dismissed without prejudice.

8. *Christopher Christie*

Plaintiff next states that former Governor Christopher Christie failed to take appropriate actions to stop rapes that occurred on females housed at AKFC. (*See* No. 18-9606, ECF 1 at 30). Plaintiff claims that he became emotionally distraught when he read in the newspaper that Christie had been informed of the rapes a year prior to this occurrence. (*See id.* at 31).

The PLRA prohibits recovery for damages for mental and emotional injuries absent a showing of physical injury. *See* 42 U.S.C. § 1997e(e); *Mitchell v. Horn*, 318 F.3d 523, 535-36 (3d Cir. 2003). Plaintiff alleges no physical injury arising out of his allegations against Christie. Therefore, his claims against the former governor will be dismissed without prejudice.[5]

9. *Jane Doe Triage Nurses*

Next, plaintiff alleges that due to a calorie deficiency in his diet while detained at MCCC (*see* No. 18-9606, ECF 1 at 24), his immune system weakened resulting in frequent respiratory infections. (*See id.*) When it was determined that the infection was viral, he received many different congestion medications, but "Triage Nurses" purportedly failed to properly order a corresponding increase in his caloric intake. (*See id.* at 39).

Plaintiff admits that he was given medication for his ailments by the "Triage Nurses." Thus, his complaint with respect to the "Triage Nurses" relates to a disagreement as to how best to treat his respiratory ailments. Such allegations are insufficient to state a claim for deliberate indifference. Indeed, "when medical care is provided, [courts] presume that the treatment of a prisoner is proper *absent evidence* that it violates professional standards of care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (emphasis added); *accord Brown v.*

---

[5] As noted previously, to the extent that plaintiff is seeking injunctive relief from the former Governor, and Williams is no longer incarcerated at AKFC, thus mooting his injunctive relief claims.

*Borough of Chambersburg*, 903 F.2d 274. 278 (3d Cir. 1990) ("it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights"); *Monmouth Cnty. Corr. Inst. v. Lanzaro*, 834 F.2d 326. 346 (3d. Cir. 1987) ("mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation"); *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) ("the propriety or adequacy of a particular course of treatment... remains a question of sound professional judgment."). Thus, neither a plaintiff's personal, subjective dissatisfaction with the care he has been provided, nor his disagreement with the professional judgment of trained medical staff, in and of itself, is sufficient to establish deliberate indifference. *See Hairston v. Director Bureau of Prisons*, 563 F. App'x. 893. 895 (3d Cir. 2014); *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990): *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Accordingly, plaintiff's claims against the "Triage Nurses" will be dismissed without prejudice.

    10. *S.A. Moon*

Besides stating that S.A. Moon is a Sergeant/Law Enforcement Adjudicator at MCCC, plaintiff fails to state any specific factual allegations with any facial plausibility that this individual violated plaintiff's constitutional rights. Accordingly, any claims plaintiff is seeking to raise against S.A. Moon will be dismissed without prejudice.

    11. *Dr. Roth*

Plaintiff alleges he was given extremely small portions of food to the point of starvation while detained at AFKC. He states that he made Dr. Roth aware of the food portions he was receiving, but that Dr. Roth told him to "shut the f**k up." (No. 18-9606, ECF 1 at 44).

As a pretrial detainee, plaintiff's condition of confinement claim is analyzed under the Fourteenth Amendment as opposed to the Eighth Amendment. *See Hubbard v. Taylor,* 538 F.3d 229, 231 (3d Cir. 2008) (explaining that Fourteenth Amendment applies to pretrial detainees' conditions of confinement claim). "The Constitution mandates that prison officials satisfy inmates' 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.'" *Duran v. Merline,* 923 F. Supp. 2d 702, 719 (D.N.J. 2013) (quoting *Helling v. McKinney,* 509 U.S. 25, 32 (1993)) (remaining citation omitted). The plaintiff must allege that the defendant knew of and disregarded an excessive risk to plaintiff's health. *See Wilson v. Burks,* 423 F. App'x 169, 173 (3d Cir. 2011) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

Considering plaintiff's allegations regarding his food, or lack thereof, and Roth's knowledge but purportedly lack of action upon plaintiff notifying Roth about the issue, plaintiff's claim against Roth related to plaintiff's inadequate food portions will be permitted to proceed past screening.

Plaintiff also attempts to raise claims against Roth in his complaint initially filed in No. 19-8930. Plaintiff's explains that Roth walked onto plaintiff's housing unit and exclaimed that plaintiff was suing for $400 million and that people should "lie on him." (No. 19-8930, ECF 1 at 14).

This Court liberally construes these allegations as attempting to bring a retaliation claim against Roth. "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal connection between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Yost,* 427 F. App'x 70, 72 (3d Cir. 2011) (quoting *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003)). With respect to

the third element, the plaintiff must allege that the constitutionally protected conduct was a substantial or motivating factor for the adverse action to sufficiently state a retaliation claim. *See Velasquez v. Diguglielmo*, 516 Fed.Appx. 91, 95 (3d Cir. 2013) (citing *Cater v. McGrady*, 292 F.3d 152, 157, 158 (3d Cir. 2002)); *Rauser* [*v. Horn*, 241 F.3d [330,] 333 [ (3d Cir. 2001) ]. Furthermore:

> To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff (here, a prisoner) usually has to prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). If neither of these showings is made, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation." *Id.*

*DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010). While temporal proximity is relevant in First Amendment retaliation cases, *see Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002) (citing *Rauser*, 241 F.3d at 334), "'[t]he mere passage of time is not legally conclusive proof against retaliation.'" *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (quoting *Robinson v. Southeastern Pa. Transp. Auth*, 982 F.2d 892, 894 (3d Cir. 1993)) (other citation omitted).

Without more allegations as it relates to Roth specifically, this Court finds that plaintiff has failed sufficiently allege an adverse action to sustain a retaliation claim against him past the screening stage. *See Chruby v. Kowaleski*, 534 F. App'x 156, 161 (3d Cir. 2013) (finding that verbal threat to write plaintiff up for misconduct charge if he wrote a letter defendant deemed inappropriate or impolite was not enough to deter plaintiff from exercising his constitutional rights). Accordingly, plaintiff's condition of confinement claim against Roth regarding food will proceed but plaintiff's retaliation claim against Roth will be dismissed without prejudice.

12. *Adezio/John Doe #1 Homeware Video Visitation Systems*

Plaintiff sues Adezio in his role as "Record Custodian/Mercer County Counsel." He also sues John Doe #1 as the President of Homeware Video Visitation Systems. He states that he, along with other inmates, were improperly up charged in violation of state law for using video visitation monitors.

These allegations fail to state a constitutional claim. *See, e.g.*, *Ruhl v. Hardy*, No. 16-6123, 2016 WL 9711034, at *2 (N.D. Ill. Aug. 22, 2016) (noting request for refund seeking enforcement of state law limiting amount of upcharges for commissary items does not itself implicate the Constitution) (citing *Tenny v. Blagojevich*, 659 F.3d 578, 583 (7th Cir. 2011)) (other citation omitted). Accordingly, plaintiff's claims against these defendants will be dismissed without prejudice.

13. *Aguirre*

With respect to plaintiff's allegations against Aguirre as it relates to plaintiff specifically[6], he alleges that Aguirre purportedly inserted a magic marker in plaintiff's rectum during a forced drugging of plaintiff. (*See* No. 18-9606, ECF 1 at 31). This caused plaintiff to bleed. (*See id.*) Plaintiff also asserts that Aguirre threatened to kill plaintiff if he did not remove him as a defendant in his complaint in 18-9606. (*See* No. 19-8930, ECF 1 at 15). This Court construes these allegations as attempting to bring both an excessive force and retaliation claim against Aguirre.

---

[6] Plaintiff also alleges that Aguirre threw an Asian patient down the steps. (*See* No. 18-9606, ECF 1 at 31). However, as these allegations do not relate to a purported injury suffered by plaintiff, such allegations fail to state a claim as it relates to plaintiff's seeking relief.

This Court will permit plaintiff's claims related to Aguirre's purported pushing a magic marker up plaintiff's rectum to proceed past screening. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (holding "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable").

This Court finds the complaint has sufficiently alleged the first and third elements of sufficiently stating a retaliation claim through his filing of a civil complaint, *see Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) (filing of civil complaint is constitutionally protected conduct under the First Amendment) and the casual connection that Aguirre made in referencing that complaint when he threatened plaintiff. The issue then becomes though whether Aguirre's verbal threats that he would kill plaintiff if he did not remove Aguirre as a defendant constitute adverse action.

The Third Circuit has noted some of the types of actions in the prison context that are sufficient to establish adversity: "several months in disciplinary confinement, denial of parole, financial penalties, and transfer to an institution whose distance made regular family visits impossible; and placement in administrative segregation that severely limited access to the commissary, library, recreation, and rehabilitative programs." *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (citing *Mitchell v. Horn*, 318 F.3d 523 530 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Allah v. Seiverling*, 229 F.3d 220, 225-26 (3d Cir. 2000)). Additionally, some District Courts have noted that "to state a constitutional claim, verbal threats must be accompanied by some reinforcing act that escalated the threat beyond more words." *Boyd v. Larson*, No. 16-1789, No. 16-1789, 2017 WL 1904278, at *5 (M.D. Pa. Apr. 21, 2017) (collecting cases), *report and recommendation adopted by*, 2017 WL 1862346 (M.D. Pa. May 9, 2017). Indeed, one District Court within this Circuit held last year that a single incident

where prison guards threatened to kill a plaintiff, absent any physical contact, was insufficient to constitute adverse action. *See Green v. Wetzel*, No. 18-93, 2019 WL 1426955, at *7 (W.D. Pa. March 29, 2019). However, in this case, plaintiff has alleged that Aguirre on several occasions threatened to kill him on several occasions during a two-week period. Furthermore, this Court is also aware of other cases where threats to kill, if specific enough, could constitute an adverse action. *See, e.g.*, *Stow v. McGrath*, 2019 WL 1208810, at *3 (D.N.H. March 14, 2019) (finding that threat of taking a clean shot against plaintiff was sufficient to satisfy adverse action element or retaliation claim); *Williams v. Hesse*, No. 16-1343, 2018 WL 1363759, at *8 (N.D.N.Y. Feb. 2, 2018) (finding threats to have plaintiff "fucked up real bad" to kill plaintiff, telling plaintiff he was "gonna show you how I deal with your kind," and spitting tobacco in plaintiff's face plausibly alleged adverse action); *cf. Gibson v. Jean-Baptiste*, No. 17-42, 2018 WL 8807651, at *3 (W.D. Tex. Sept. 28, 2018) (noting that threatening to kill a plaintiff to her face would perhaps suffice as an adverse action). Given the early stages of these proceedings and based on plaintiff's allegations of Aguirre's several threats to kill plaintiff over a modest two-week period between March 1, 2019 and March 15, 2019, this Court finds that proceeding this claim against Aguirre is the more prudent course at this time. Accordingly, plaintiff's excessive force and retaliation claims against Aguirre will proceed past screening.

14. *Almeen Jenkins*

Plaintiff alleges that Almeen Jenkins is a Medical Security Officer at AFKC. (*See* No. 18-9606, ECF 1 at 12). He alleges that he is litigating a civil action against her. He further states that:

he nearly died as a result of a negative reaction to chemical
psychotropic drugs that were illegally and brutally stabbed/injected
into Plaintiff's body for non-emergency reasons while he was
punitively held at the Ann Klein Forensic Center, in an attempt to
"break his spirits" as it was described by Medical Security Officer
Almeen Jenkins.

(*See id.* at 43).

This Court will permit a retaliation claim against Jenkins to proceed past screening.

Plaintiff has alleged protected activity by asserting his filing of a civil complaint against Jenkins.

Further, he has alleged an adverse action. He claims that he was illegally forced to take drugs.

Finally, Jenkins comments regarding "breaking his spirits" satisfies a causal connection at least

at this early stage of the proceedings to warrant proceeding this claim.

### 15. *H. Pica, M. Cheek, M. Green*

Plaintiff next attempts to bring claims against H. Pica, M. Cheek and M. Green for their

role in purportedly fabricating (or in Mr. Green's case, hearing that Cheek fabricated), incident

reports against him. (*See* No. 19-8930, ECF 1 at 14-15). This Court finds such allegations against

these three defendants fail to state with enough factual support and facial plausibility any

constitutional claim. Instead, the allegations are merely conclusory which is insufficient to state a

claim under *Iqbal*. Therefore, the claims against these three defendants will be dismissed without

prejudice.

### 16. *Dariusz Chacinski*

Next, plaintiff alleges that Dr. Chacinski lied on records before an IMAR panel in a

different patient's case that plaintiff was working on. (*See* No. 19-8930, ECF 1 at 16). Plaintiff

fails to allege how such allegations amount to a constitutional violation against him. Thus,

plaintiff's claims against this defendant will be dismissed without prejudice.

17. *Riccardo Grippaldi, J. Wilkins, Silas Odaa*

Plaintiff next alleges that defendants Grippaldi, Wilkins and Odaa are being employed illegally and/or do not possess the requisite degrees for their positions. (*See* No. 19-8930, ECF 1 at 17-18). This Court fails to see how such allegations by themselves without more amount to a violation under the constitution. Accordingly, plaintiff's claims against these three defendants are dismissed without prejudice.

18. *Justyna Oberschmidt*

Like the three defendants cited above, plaintiff also alleges that Oberschmidt does not possess a nursing degree. (*See* No. 19-8930, ECF 1 at 17). Again, this Court fails to see how such an allegation, without more, rises to the level of a constitutional violation. However, it is worth noting that plaintiff's allegations against this defendant do go a bit further as plaintiff does allege that Oberschmidt gave plaintiff Tylenol for a 104 degree temperature. (*See id.* at 20). To the extent that plaintiff is attempting to bring a medical care claim against Oberschmidt based on this allegation, it fails to state an action given that plaintiff's allegations amount only to a disagreement as to how his fever was treated, not that Oberschmidt was deliberately indifferent to his serious medical needs. Accordingly, the claims against this defendant will also be dismissed without prejudice.

19. *L. Hargis*

Plaintiff also names L. Hargis as a defendant. However, the caption appears to be the only place Hargis is named in the complaint. (*See* No. 19-8930, ECF 1 at 9). Accordingly, without any personal involvement alleged, plaintiff's claims against Hargis will be dismissed without prejudice. *See Rode*, 845 F.2d at 1207.

20. *Dr. Singh*

Plaintiff's allegations against Dr. Singh are as follows:

> Plaintiff asserts that elderly Dr. Singh was brainwashed by
> Defendant Dr. Robert Roth, and did proceed to tell me false,
> slanderous statements that Dr. Singh claim was told to him by
> illegally employed Dr. Robert Roth who cleverly instilled fear and
> apprehension in the elderly Dr. Singh.

(No. 19-8930, ECF 1 at 18). This Court fails to see how these allegations against Dr. Singh

amount to a constitutional violation. Accordingly, plaintiff's claims against Dr. Singh will be

dismissed without prejudice.

21. *D. Kessler*

Plaintiff alleges that D. Kessler is the CEO of AKFC. For similar reasons as to why

plaintiff's claims against Ferguson in 18-9606 fail to state a claim, so too does plaintiff's attempt

to bring Section 1983 claims against Kessler in No. 19-8930 also fail to state a claim.

Accordingly, the claims against this defendant will also be dismissed without prejudice.

22. *Remaining Allegations*

Plaintiff also makes several other factual allegations in his consolidated complaints.

Among them are the following:

1. Not being feed sufficiently while detained at MCCC (*see* No. 18-9606, ECF 1 at 23-24);

2. Medical co-pays at MCCC (*see id.* at 24);

3. Being held at AKFC beyond the time permitted by state court (*see id.* at 27);

4. Developing Parkinson's Disease as a result of an overdose of psychotropic drugs (*see id.* at 29);

5. Being illegally strip searched at MCCC (*see id.* at 33);

6. Performing slave labor while detained at MCCC by not being compensated for jobs within the facility (*see id.* at 42); and

7. Side-effects he is feeling from taking his medications (*see* No. 19-8930, ECF 1 at 19-22).

This Court need not determine whether such allegations would constitute stating a claim as all these allegations have one overarching pleading defect; namely they fail to state with any facial plausibility how any of the defendants were personally involved in these purported actions/inactions. Therefore, plaintiff fails to state a claim related to these allegations.

## IV.    CONCLUSION

For the foregoing reasons, plaintiff's excessive force claim against defendant Aguirre will be permitted to proceed. Additionally, plaintiff's retaliation claims against defendants Aguirre and Jenkins will be permitted to proceed. Finally, plaintiff's condition of confinement claim related to food (or lack thereof) will proceed against defendant Roth. The remainder of plaintiff's claims will be dismissed without prejudice, except for plaintiff's claims against AFKC and the Mercer County Prosecutor's Office, which will be dismissed with prejudice. An appropriate order will be entered.

_____  2/6/2020
PETER G. SHERIDAN, U.S.D.J.

February 6, 2020